**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ELMOSTAFA AIT SALAH, | |
| Plaintiff, | |
| | CASE NO.: |
| v. | |
| NATIONAL RAILROAD PASSENGER | |
| CORPORATION d/b/a AMTRAK, | JUNE 1, 2022 |
| Defendant. | |

## NOTICE OF REMOVAL

Defendant, NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK ("Defendant"), by and through the undersigned counsel and pursuant to 28 U.S.C. §§ 1349, 1441(a), and 1446, hereby removes this action from the Superior Court of the State of Connecticut, where the action is now pending, to the United States District Court for Connecticut, on the basis of original jurisdiction. The removal of this action is based upon the following:

## PROCEDURAL HISTORY

1.      On May 25, 2022, Plaintiff Elmostafa Ait Salah filed the instant action against National Railroad Passenger Corporation d/b/a Amtrak in the Superior Court of the State of Connecticut, styled *Elmostafa Ait Salah v. National Railroad Passenger Corporation d/b/a Amtrak,* Case No. MMX-CV22-6034348-S.

2.      Plaintiff's Complaint alleges unlawful discrimination on the basis of race, national origin and religion, and retaliation, all in violation of Connecticut law.

3.      Defendant was served with the Summons and Complaint on May 13, 2022.

## GROUNDS FOR REMOVAL

4.      Defendant is removing this matter based upon original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1349, as Amtrak is a federally-chartered stock corporation, and the United States owns more than one-half of Amtrak's capital stock. *See* 49 U.S.C. §§ 24301, *et seq*.; *Eichelberg v. National R.R. Passenger Corp.*, 57 F.3d 1179, 1183 n.3 (2d Cir. 1995) (Amtrak removed this action from state court on the ground that federal jurisdiction existed because Amtrak was created by an Act of Congress and the United States owns more than one-half of its capital stock); *Hollus v. Amtrak Ne. Corridor*, 937 F. Supp. 1110, 1113-14 (D.N.J. 1996), *aff'd*, 118 F.3d 1575 (3d Cir. 1997) ("Because a majority of the capital stock of Amtrak is owned by the United States, the federal courts have subject matter jurisdiction over any action involving Amtrak."). *See also Vasquez v. N. Cnty. Transit Dist.*, 292 F.3d 1049, 1060 (9th Cir. 2002) (concluding district court "had original jurisdiction over the subject matter of the litigation because the action involves Amtrak and the United States owns a majority of the capital stock of Amtrak"); *Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 758 n.1 (7th Cir. 2003) ("federal courts have jurisdiction over all cases involving Amtrak, regardless of the cause of action"); *Nat'l R.R Passenger Corp. v. Rountree Transport & Rigging, Inc.*, 286 F.3d 1233, 1259 n.25 (11th Cir. 2002) (stating, "[i]t is true that, because Amtrak is a federally chartered corporation that meets the requirements of 28 U.S.C. § 1349, federal question jurisdiction is proper").

5.      The removal of this civil action is therefore proper under 28 U.S.C. § 1441(a) because this is a civil action inappropriately brought in state court but over which the district courts of the United States have original jurisdiction.

6.     This Notice of Removal is filed within thirty (30) days after Defendant's receipt of the Summons and Complaint. Therefore, Defendant's Notice of Removal is timely in accordance with 28 U.S.C. §1446(b).

7.     Plaintiff filed the action in the Superior Court of the State of Connecticut, and the alleged conduct occurred in Connecticut. *See* Ex. A, Compl. ¶¶ 9, 15. As such, venue properly lies in the United States District Court for the District of Connecticut. 28 U.S.C. §§ 86, 1391(b), and 1441(a).

8.     A true and correct copy of all process, pleadings, orders and other papers or exhibits of every kind currently on file in the State Court Action are attached hereto as Composite Exhibit "A," as required by 28 U.S.C. § 1446(a).

9.     Pursuant to 28 U.S.C. § 1446(d), Defendant will promptly file a copy of this Notice of Removal in the Superior Court of the State of Connecticut, Judicial District of Middletown, and simultaneously provide written notice of the filing of this Notice of Removal to Plaintiff (Exhibit "B") as reflected by the Certificate of Service.

10.    By filing this Notice of Removal, Defendant does not waive any defenses available to it at law, in equity or otherwise, or concede that the plaintiff has pled claims upon which relief may be granted.

**WHEREFORE**, Defendant hereby removes this action from the Superior Court of the State of Connecticut, to the United States District Court for the District of Connecticut.

Dated: June 1, 2022

Respectfully submitted,


/s/ *Maura A. Mastrony*

Jason R. Stanevich (ct28125)
Maura A. Mastrony (ct27787)
Lindsay M. Rinehart (ct30921)
LITTLER MENDELSON, P.C.
One Century Tower
265 Church Street
Suite 300
New Haven, CT  06510
Telephone: 203.974.8700
Facsimile: 203.974.8799
jstanevich@littler.com
mmastrony@littler.com
lrinehart@littler.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 1, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.  Parties may access this filing through the Court's electronic filing system.

*/s/ Maura A. Mastrony*
Maura A. Mastrony

# Exhibit A

**SUMMONS - CIVIL**
JD-CV-1  Rev. 1-20
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259;
P.B. §§ 3-1 through 3-21, 8-1, 10-13

| For information on
ADA accommodations,
contact a court clerk or
go to: *www.jud.ct.gov/ADA.* |
|---|

STATE OF CONNECTICUT
**SUPERIOR COURT**
*www.jud.ct.gov*



**Instructions are on page 2.**

☐ Select if amount, legal interest, or property in demand, not including interest and costs, is LESS than $2,500.

☒ Select if amount, legal interest, or property in demand, not including interest and costs, is $2,500 or MORE.

☐ Select if claiming other relief in addition to, or in place of, money or damages.

**TO: Any proper officer**
By authority of the State of Connecticut, you are hereby commanded to make due and legal service of this summons and attached complaint.

| Address of court clerk *(Number, street, town and zip code)*
95 Washington Street, Hartford 06106 | Telephone number of clerk
( 860 ) 548 – 2700 | Return Date *(Must be a Tuesday)*
03/31/2020 |
|---|---|---|
| ☒ Judicial District    ☐ G.A.
☐ Housing Session    Number: ___ | At *(City/Town)*
Hartford | Case type code *(See list on page 2)*
Major: T      Minor: 90 |

**For the plaintiff(s) enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)*
Anthony J. Interlandi, Monarch Law, 36 Russ Street, Hartford 06106 | Juris number *(if attorney or law firm)*
426132 |
|---|---|
| Telephone number
( 860 ) 969 – 2909 | Signature of plaintiff *(if self-represented)* | |
| The attorney or law firm appearing for the plaintiff, or the plaintiff if
self-represented, agrees to accept papers (service) electronically
in this case under Section 10-13 of the Connecticut Practice Book. ☒ Yes ☐ No | E-mail address for delivery of papers under Section 10-13 of the
Connecticut Practice Book *(if agreed)*
tony@monarchlawct.com |

| Parties | | Name *(Last, First, Middle Initial)* and address of each party *(Number; street; P.O. Box; town; state; zip; country, if not USA)* | |
|---|---|---|---|
| First
plaintiff | Name: | Fevrier, Kenelm | P-01 |
| | Address: | 116 Mohawk Drive, East Hartford, CT 06108 | |
| Additional
plaintiff | Name: | | P-02 |
| | Address: | | |
| First
defendant | Name: | NAES Corporation | D-01 |
| | Address: | c/o CT Corporation System, 67 Burnside Ave, East Hartford, CT 06108 | |
| Additional
defendant | Name: | | D-02 |
| | Address: | | |
| Additional
defendant | Name: | | D-03 |
| | Address: | | |
| Additional
defendant | Name: | | D-04 |
| | Address: | | |

| Total number of plaintiffs: 1 | Total number of defendants: 1 | ☐ Form JD-CV-2 attached for additional parties |
|---|---|---|

## Notice to each defendant

1. **You are being sued.** This is a summons in a lawsuit. The complaint attached states the claims the plaintiff is making against you.
2. To receive further notices, you or your attorney must file an *Appearance* (form JD-CL-12) with the clerk at the address above. Generally, it must be filed on or before the second day after the Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to appear.
3. If you or your attorney do not file an *Appearance* on time, a default judgment may be entered against you. You can get an *Appearance* form at the court address above, or on-line at https://jud.ct.gov/webforms/.
4. If you believe that you have insurance that may cover the claim being made against you in this lawsuit, you should immediately contact your insurance representative. Other actions you may take are described in the Connecticut Practice Book, which may be found in a superior court law library or on-line at https://www.jud.ct.gov/pb.htm.
5. If you have questions about the summons and complaint, you should talk to an attorney.
**The court staff is not allowed to give advice on legal matters.**

| Date
02/21/2020 | Signed *(Sign and select proper box)*
☒ Commissioner of Superior Court
☐ Clerk | Name of person signing
Anthony J. Interlandi | *For Court Use Only* |
|---|---|---|---|
| If this summons is signed by a Clerk:
a. The signing has been done so that the plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the plaintiff(s) to ensure that service is made in the manner provided by law.
c. The court staff is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this summons at the request of the plaintiff(s) is not responsible in any way for any
   errors or omissions in the summons, any allegations contained in the complaint, or the service of the
   summons or complaint. | | | File Date |
| I certify I have read and
understand the above: | Signed *(Self-represented plaintiff)* | Date
02/21/2020 | Docket Number |

**Instructions**

1. Type or print legibly. If you are a self-represented party, this summons must be signed by a clerk of the court.
2. If there is more than one defendant, make a copy of the summons for each additional defendant. Each defendant must receive a copy of this summons. Each copy of the summons must show who signed the summons and when it was signed. If there are more than two plaintiffs or more than four defendants, complete the Civil Summons Continuation of Parties (form JD-CV-2) and attach it to the original and all copies of the summons.
3. Attach the summons to the complaint, and attach a copy of the summons to each copy of the complaint. Include a copy of the Civil Summons Continuation of Parties form, if applicable.
4. After service has been made by a proper officer, file the original papers and the officer's return of service with the clerk of the court.
5. Use this summons for the case type codes shown below.

   Do *not* use this summons for the following actions:

   (a) Family matters (for example divorce, child support, custody, paternity, and visitation matters)
   (b) Any actions or proceedings in which an attachment, garnishment or replevy is sought
   (c) Applications for change of name
   (d) Probate appeals

   (e) Administrative appeals
   (f) Proceedings pertaining to arbitration
   (g) Summary Process (Eviction) actions
   (h) Entry and Detainer proceedings
   (i) Housing Code Enforcement actions

**Case Type Codes**

| MAJOR DESCRIPTION | CODE Major/ Minor | MINOR DESCRIPTION | MAJOR DESCRIPTION | CODE Major/ Minor | MINOR DESCRIPTION |
|---|---|---|---|---|---|
| Contracts | C 00 | Construction - All other | Property | P 00 | Foreclosure |
| | C 10 | Construction - State and Local | | P 10 | Partition |
| | C 20 | Insurance Policy | | P 20 | Quiet Title/Discharge of Mortgage or Lien |
| | C 30 | Specific Performance | | P 30 | Asset Forfeiture |
| | C 40 | Collections | | P 90 | All other |
| | C 50 | Uninsured/Underinsured Motorist Coverage | | | |
| | C 90 | All other | Torts (Other than Vehicular) | T 02 | Defective Premises - Private - Snow or Ice |
| Eminent Domain | E 00 | State Highway Condemnation | | T 03 | Defective Premises - Private - Other |
| | E 10 | Redevelopment Condemnation | | T 11 | Defective Premises - Public - Snow or Ice |
| | E 20 | Other State or Municipal Agencies | | T 12 | Defective Premises - Public - Other |
| | E 30 | Public Utilities & Gas Transmission Companies | | T 20 | Products Liability - Other than Vehicular |
| | E 90 | All other | | T 28 | Malpractice - Medical |
| | | | | T 29 | Malpractice - Legal |
| Housing | H 10 | Housing - Return of Security Deposit | | T 30 | Malpractice - All other |
| | H 12 | Housing - Rent and/or Damages | | T 40 | Assault and Battery |
| | H 40 | Housing - Housing - Audita Querela/Injunction | | T 50 | Defamation |
| | H 50 | Housing - Administrative Appeal | | T 61 | Animals - Dog |
| | H 60 | Housing - Municipal Enforcement | | T 69 | Animals - Other |
| | H 90 | Housing - All Other | | T 70 | False Arrest |
| | | | | T 71 | Fire Damage |
| | | | | T 90 | All other |
| Miscellaneous | M 00 | Injunction | | | |
| | M 10 | Receivership | Vehicular Torts | V 01 | Motor Vehicles* - Driver and/or Passenger(s) vs. Driver(s) |
| | M 15 | Receivership for Abandoned/Blighted Property | | V 04 | Motor Vehicles* - Pedestrian vs. Driver |
| | M 20 | Mandamus | | V 05 | Motor Vehicles* - Property Damage only |
| | M 30 | Habeas Corpus (extradition, release from Penal Institution) | | V 06 | Motor Vehicle* - Products Liability Including Warranty |
| | M 40 | Arbitration | | V 09 | Motor Vehicle* - All other |
| | M 50 | Declaratory Judgment | | V 10 | Boats |
| | M 63 | Bar Discipline | | V 20 | Airplanes |
| | M 66 | Department of Labor Unemployment Compensation Enforcement | | V 30 | Railroads |
| | | | | V 40 | Snowmobiles |
| | M 68 | Bar Discipline - Inactive Status | | V 90 | All other |
| | M 70 | Municipal Ordinance and Regulation Enforcement | | | *Motor Vehicles include cars, trucks, motorcycles, and motor scooters. |
| | M 80 | Foreign Civil Judgments - C.G.S. 52-604 & C.G.S. 50a-30 | | | |
| | M 83 | Small Claims Transfer to Regular Docket | Wills, Estates and Trusts | W 10 | Construction of Wills and Trusts |
| | M 84 | Foreign Protective Order | | W 90 | All other |
| | M 89 | CHRO Action in the Public Interest - P.A. 19-93 | | | |
| | M 90 | All other | | | |

| DOCKET NO.: | : | SUPERIOR COURT |
| KENELM FEVRIER | : | J.D. OF HARTFORD |
| v. | : | AT HARTFORD |
| NAES CORPORATION | : | FEBRUARY 21, 2020 |

## COMPLAINT

GENERAL ALLEGATIONS

1. At all times set forth herein, the Plaintiff, Kenelm Fevrier, was a resident of East Hartford, Connecticut.

2. The Plaintiff is a Black man who was born in Guyana. He moved to the United States in 1984 and became a U.S. citizen in 1991.

3. The Defendant, NAES Corporation, operates a facility in Hartford, Connecticut (the "Hartford Facility"). The Defendant's business address is 1180 NW Maple Street, Suite 200, Issaquah, Washington.

4. In 2012, the Defendant succeeded Covanta Energy as the operator of the Hartford Facility.

5. At all times set forth herein, the Defendant employed at least 3 people.

6. The Plaintiff worked for Covanta Energy from 1987 through 2012. The Plaintiff received an offer letter from the Defendant dated April 25, 2012. He began working for the Defendant shortly thereafter.

7. The Defendant's offer letter to the Plaintiff states, in part, "Your prior service with Covanta at the PBF will be recognized by NAES for benefits eligibility, vesting, and accrual purposes under the NAES Retirement and 401(k) plan and will also be used to calculate your level of FlexLeave (paid time off) accrual."

8. The Defendant maintained a personnel file for the Plaintiff. The file contained, among other things, a form titled, "WORK EXPERIENCE" that reflected the Plaintiff's start date at Covanta Energy as September 28, 1987.

9. In September 2012, the Defendant recognized and congratulated the Plaintiff for completing his "twenty-fifth anniversary at CRRA-MID-CONN (PBF) on 9/28/2012." As a token of its appreciation, the Defendant gave the Plaintiff a $125.00 American Express Card and service pin.

10. The Defendant terminated the Plaintiff in October 2017. At that time, the Plaintiff held the title of Lead Maintenance Mechanic. During his employment with the Defendant, the Plaintiff also held the titles of Safety Lead and/or Safety Observer.

11. The Plaintiff worked with the following people at Covanta Energy and the Defendant: (a) John Grahn (White/Caucasian), (b) John Rivara (White/Caucasian), (c) Fred Bradley (Black), and Roosevelt Johnson (Black).

12. In or around October 2014, the Plaintiff and Mr. Grahn applied for an increase in pay for outage work. At that time, the Plaintiff and Mr. Grahn were lead mechanics with similar experience and training. Upon information and belief, the Defendant granted Mr. Grahn's request but denied the Plaintiff's request.

13. In or around December 2014, the Plaintiff met with John O'Rourke, Plant Manager, and Mr. Rivara, Maintenance Manager. During this meeting, the Plaintiff complained about the unequal treatment, including pay, that he experienced as compared to Mr. Grahn. Specifically, the Plaintiff complained about the availability and distribution of overtime hours. The Plaintiff requested that the Defendant give him the same opportunities to work additional overtime that were given to similarly situated White/Caucasian co-workers. The Plaintiff further requested

that the Defendant place he and Mr. Grahn on a rotational cycle to level the playing field. The Defendant denied his requests. Shortly thereafter, the Defendant removed the Plaintiff as a Safety Observer and required him to report directly to Mr. Grahn.

14. Upon information and belief, from January 2015 through October 2017, Mr. Grahn earned more in salary and overtime pay than the Plaintiff. Upon information and belief, during this time, the Defendant placed Mr. Grahn on "call duty" but the Plaintiff was not.

15. On June 8, 2017, the Plaintiff suffered a work-related injury to his right hand.

16. On or about September 8, 2017, the Plaintiff's doctor released him to full duty work except for climbing ladders and lifting more than 35 pounds. The Defendant initially required the Plaintiff to work in the warehouse and did not schedule him for any overtime hours.

17. In or around September 2017, Patrick Garrison, a similarly situated White/Caucasian co-worker, got injured but returned to work with restrictions that prevented him from engaging in any kind of movement that strained his eyesight. The Defendant accommodated Mr. Garrison and allowed him to accumulate overtime hours despite his work restrictions. Mr. Rivara told Mr. Garrison not to exert himself. The overtime work performed by Mr. Garrison did not require him to climb ladders or lift objects that weighed more than 35 pounds.

18. Mr. Garrison earned overtime pay by staying in the shop and overseeing the work of the Defendant's contractors. The Plaintiff was familiar with this task and regularly performed such as Lead Mechanic.

19. In or around September 2017, the Defendant returned the Plaintiff to his regular job as Lead Mechanic for the night shift.

20. From approximately September 2017 through October 16, 2017, the Plaintiff was ready, willing and able to work overtime hours.

3

21. On October 7, 2017 and October 10, 2017, Kevin Trempe, a White/Caucasian co-worker, reported false accusations about the Plaintiff to the Defendant.

22. On October 8, 2017 and October 10, 2017, Seth Herron, a White/Caucasian co-worker, reported false accusations about the Plaintiff to the Defendant.

23. The Defendant interviewed the Plaintiff about the accusations made by Messrs. Trempe and Herron on October 10, 2017. The Plaintiff denied the accusations against him.

24. Upon information and belief, from 2014 through 2017, similarly situated White/Caucasian co-workers occasionally failed to sign work clearance permits. Upon information and belief, the Defendant ignored their conduct or levied less severe discipline than what it gave to the Plaintiff in October 2017.

25. In October 2017, the Defendant reprimanded and sought to punish the Plaintiff for allegedly failing to follow a specific Job Hazard Analysis Form ("JHA-75"). In or around the middle of 2017, similarly situated White/Caucasian co-workers ignored and/or failed to follow JHA-75. Upon information and belief, the Defendant ignored their conduct or levied less severe discipline than what it gave to the Plaintiff in October 2017.

26. The Defendant's JHA-75, which sets forth a new procedure for the "Installation and Removal of Maintenance Deck ("dance floor")," applied to the operations and maintenance departments. The JHA-75 was approved on May 3, 2017.

27. In or around October 2017, the Plaintiff had no knowledge of JHA-75. The Defendant did not give the Plaintiff a copy of JHA-75 when he returned to work after his hand injury nor did it inform him of the new procedures in JHA-75.

28. Mr. Bradley worked in the maintenance department. He worked during the night shift that the Plaintiff allegedly failed to follow JHA-75. Upon information and belief, Mr. Bradley is

4

familiar with JHA-75, as well as the prior procedure that the Defendant's employees continued to utilize to install/remove a dance floor in September and October of 2017. The Defendant failed to require or demand a report from Mr. Bradley concerning the alleged incident involving the Plaintiff.

29. In the morning of October 7, 2017, Mr. O'Rourke sent an e-mail to Michael Slavin, a White/Caucasian co-worker of the Plaintiff. Mr. O'Rourke requested that Mr. Slavin provide him with a report concerning his "side of the story and understanding of the [JHA-75] incident." Mr. Slavin responded that evening via e-mail.

30. Mr. Slavin reported, in part, that there was "confusion" and confirmed with the Plaintiff that the "original SOP evolution was not changed." Mr. Slavin reported that he talked to the Plaintiff and his "crew" and "made sure [they] were on the same page. Meaning; beams were in, grates locked, stoker door removed, lower furnace de-clinkered, run off grates, then boards on dance floor." At all times set forth herein, the Plaintiff was required to communicate with Mr. Slavin for work clearance authorizations.

31. The procedure described in Mr. Slavin's e-mail to Mr. O'Rourke directly contradicted the procedure in JHA-75 and supported the Plaintiff's version of the "incident."

32. On or about Friday, October 13, 2017, the Defendant presented a "Decision-Making Leave" form (the "DML form") to the Plaintiff for his signature. It included a 5-day suspension. The Plaintiff refused to sign the form because he disagreed with the statements set forth therein.

33. The Defendant did not tell the Plaintiff that his refusal to sign the DML form would result in immediate termination from employment.

34. The Defendant did not voluntarily give the Plaintiff a copy of the DML form or give him time to reconsider his decision.

35. As a result of the Plaintiff's refusal to sign the DML form, the Defendant terminated his employment. Mr. Rivara led the Plaintiff out of the building.

36. The Plaintiff was shocked that the Defendant terminated him. The Plaintiff requested a copy of the DML form as he was escorted out of the building. The Plaintiff received an unsigned and undated copy of the DML form. The effective date of the Plaintiff's termination is October 17, 2017.

37. The DML form that the Plaintiff received does not contain a statement explaining that he could submit a written statement disagreeing with anything in the document.

38. At all times set forth herein, the Defendant did not have a written policy reflecting a so-called "zero tolerance" when employees refused to sign a DML form. In fact, the form itself merely states that termination may be a consequence of refusing to sign.

39. The Defendant could have taken less severe disciplinary action against the Plaintiff for his alleged safety violations. In November 2014, the Defendant terminated Jason Krummel, a similarly situated White/Caucasian co-worker, but only after he received various levels of discipline in the prior two years.

40. In or around August 2012, the Defendant verbally counseled Mr. Krummel "for violation of furnace entry safety procedures and protocols on 8/10/12 with no injuries involved."

41. In or around February 2013, the Defendant issued a written warning to Mr. Krummel "for violation of furnace entry safety procedures and protocols which resulted in a recordable injury to another employee 2/8/13."

42. In or around August 2013, the Defendant issued a "Decision-Making Leave Report" to Mr. Krummel for continued violations of the Defendant's safety policies and procedures.

43. Upon information and belief, the Defendant did not terminate a White/Caucasian worker at the Hartford facility from 2012 through October 2017 for refusal to sign a DML form.

44. Upon information and belief, the White/Caucasian co-workers identified in the preceding paragraphs were born in the United States of America.

45. Prior to instituting this action, the Plaintiff filed charges with the Connecticut Commission on Human Rights and Opportunities. The Plaintiff received a Release of Jurisdiction ("ROJ") letter dated December 20, 2019. The Plaintiff has therefore exhausted his administrative remedies, and this complaint is brought within 90 days of the Release of Jurisdiction letter. The Defendant's legal counsel in the underlying administrative matter received a copy of the ROJ letter.

FIRST COUNT: COLOR DISCRIMINATION IN VIOLATION OF C.G.S. § 46a-60(b)(1)

1-45. The Plaintiff repeats and re-alleges paragraphs 1 through 45 above and incorporates them as paragraphs 1 through 45 of this First Count as if fully stated herein.

46. The Defendant terminated the Plaintiff's employment and discriminated against him in the terms, conditions, and/or privileges of his employment based on his skin color, as set forth above, in violation of Connecticut law.

47. The Defendant's reason for the Plaintiff's termination is a pretext for illegal discrimination.

48. As a result of the foregoing unlawful conduct, the Plaintiff has suffered, and will continue to suffer, monetary damages, including lost wages.

49. As a further result of the foregoing unlawful conduct, the Plaintiff has suffered and will continue to suffer, emotional distress, humiliation and anxiety.

50. As a further result of the foregoing unlawful conduct, the Plaintiff has incurred, or will incur in the future, attorney's fees and costs.

SECOND COUNT: NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF
C.G.S.§ 46a-60(b)(1)

1-45. The Plaintiff repeats and re-alleges paragraphs 1 through 45 of the General Allegations above
and incorporates them as paragraphs 1 through 45 of this Second Count as if fully stated herein.

46. The Defendant terminated the Plaintiff's employment and discriminated against him in the
terms, conditions, and/or privileges of his employment based on his national origin, as set forth
above, in violation of Connecticut law.

47. The Defendant's reason for the Plaintiff's termination is a pretext for illegal discrimination.

48. As a result of the foregoing unlawful conduct, the Plaintiff has suffered, and will continue to
suffer, monetary damages, including lost wages.

49. As a further result of the foregoing unlawful conduct, the Plaintiff has suffered and will
continue to suffer, emotional distress, humiliation and anxiety.

50. As a further result of the foregoing unlawful conduct, the Plaintiff has incurred, or will incur
in the future, attorney's fees and costs.

THIRD COUNT: RETALIATION IN VIOLATION OF C.G.S. § 46a-60(b)(4)

1-45. The Plaintiff repeats and re-alleges paragraphs 1 through 45 of the General Allegations
above and incorporates them as paragraphs 1 through 45 of this Third Count as if fully stated
herein.

46. The Defendant retaliated against the Plaintiff for opposing the aforementioned unlawful and
discriminatory conduct by subjecting him to a further course of discriminatory treatment and
ultimately terminating his employment all in violation of Connecticut law.

47. The Defendant's reasons for the Plaintiff's termination is a pretext for illegal retaliation.

48. As a result of the foregoing unlawful conduct, the Plaintiff has suffered, and will continue to
suffer, monetary damages, including lost wages.

8

49. As a further result of the foregoing unlawful conduct, the Plaintiff has suffered and will continue to suffer, emotional distress, humiliation and anxiety.

50. As a further result of the foregoing unlawful conduct, the Plaintiff has incurred, or will incur in the future, attorney's fees and costs.

WHEREFORE, the Plaintiff claims:

    a.  Compensatory damages, including but not limited to lost wages and benefits,

    b.  Reinstatement of employment or front pay,

    c.  Reasonable attorney's fees and costs, and

    d.  Such other relief in law or equity as this Court deems appropriate and equitable.

THE PLAINTIFF,

BY:_____

Anthony J. Interlandi, Esq.
Monarch Law
36 Russ Street
Hartford, CT 06106
(860) 828-2166
tony@monarchlawct.com

10

| DOCKET NO.: | : | SUPERIOR COURT |
| KENELM FEVRIER | : | J.D. OF HARTFORD |
| v. | : | AT HARTFORD |
| NAES CORPORATION | : | FEBRUARY 21, 2020 |

## STATEMENT OF AMOUNT IN DEMAND

The amount in demand, exclusive of intertest and costs, exceeds the sum of Fifteen Thousand ($15,000.00) Dollars.


THE PLAINTIFF,

BY: _____

Anthony J. Interlandi, Esq.
Monarch Law
36 Russ Street
Hartford, CT 06106
(860) 828-2166
tony@monarchlawct.com

Exhibit B

**SUPERIOR COURT**
**JUDICIAL DISTRICT OF MIDDLESEX AT MIDDLETOWN**
**STATE OF CONNECTICUT**

ELMOSTAFA AIT SALAH,

     Plaintiff,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION d/b/a AMTRAK,

     Defendant.

CASE NO: MMX-CV22-6034348-S

JUNE 1, 2022

## <u>DEFENDANT'S NOTICE OF FILING REMOVAL</u>

     Defendant, National Railroad Passenger Corporation d/b/a Amtrak ("Defendant" or "Amtrak"), by and through undersigned counsel, hereby files this Notice of Filing Removal and states as follows:

     1.     On May 2, 2022, Plaintiff Elmostafa Ait Salah filed the instant action against Defendant alleging unlawful discrimination on the basis of race, national origin and religion, and retaliation, all in violation of Connecticut law.

     2.     On May 26, 2022, 2022, Defendant filed a Notice of Removal in the United States District Court for the District of Connecticut on the basis of original jurisdiction pursuant to 28 U.S.C. §§ 1349 and 1441(a). A copy of Defendant's Notice of Removal filed in Federal Court is attached as Exhibit 1.

     3.     The filing of said Notice of Removal with the United States District Court and this Notice of Filing Notice of Removal, together effect the removal of this action.  This Notice to the Superior Court was filed and served pursuant to 28 U.S.C. § 1446(d).

Dated: June 1, 2022                          Respectfully submitted,


                                             /s/ Maura A. Mastrony
                                             Maura Mastrony, Bar No. 428191
                                             Lindsay Rinehart, Bar No. 438219

                                             LITTLER MENDELSON P.C.
                                             One Century Tower
                                             265 Church Street
                                             Suite 300
                                             New Haven, CT 06510
                                             Telephone: 203.974.8700
                                             Facsimile: 203.974.8799
                                             mmastrony@littler.com
                                             lrinehart@littler.com

                                             Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2022, a copy of the foregoing was sent via e-mail to all

counsel and pro se parties of record as follows:

Matthew Paradisi
Cicchiello & Cicchiello, LLP
364 Franklin Avenue
Hartford, CT 06114


*/s/ Maura A. Mastrony*
Maura A. Mastrony